IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-17-BR

| | | |
|---|---|---|
| JOHN T. MARTIN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BIMBO FOODS BAKERIES | ) | |
| DISTRIBUTION, INC. formally known as | ) | |
| GEORGE WESTON BAKERIES | ) | |
| DISTRIBUTIONS, INC., | ) | |
|     Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's ("defendant" or "BFBD") motion to dismiss, in part, plaintiff's complaint. (DE # 14.) Plaintiff filed a response in opposition to the motion, (DE # 25), to which defendant filed a reply, (DE # 33). The motion is ripe for disposition.

In 2006, for $108,000, plaintiff, as an "independent operator," purchased a distribution route which granted him exclusive rights to purchase bakery products from defendant and sell those products to grocery store chains and independent grocers in a designated area. (Compl., DE # 1-1, ¶¶ 6, 8.) Around the same time, plaintiff entered into a Distribution Agreement with defendant. (Id. ¶ 5 & Ex. 1.) Plaintiff is "paid on a percentage of sales or a margin on the sale of product." (Id. ¶ 8.)

In June 2013, defendant informed plaintiff and other local independent operators that it was reducing the margins to be paid to them. (Id. ¶ 10.) Plaintiff and most of the other independent operators "united in an effort to fight the Defendant's effort to unilaterally reduce margins." (Id. ¶ 12.) A committee of six independent operators was formed to communicate and negotiate with defendant about the reduced margins. (Id.) Plaintiff was one of the committee

members and took an active role in the committee, being "outspoken with regard to the sentiment of the 30 independent operators relative to the payment of commissions and/or reduction of margins received for services." (Id. ¶¶ 12, 18.) Various forms of communication between the committee, its counsel, representatives of defendant, and defense counsel occurred. (See id. ¶¶ 14-16.) According to plaintiff, defendant refused to negotiate. (Id. ¶ 15.)

In the meantime, plaintiff continued to operate his distribution route. (Id. ¶ 20.) On 21 December 2013, Brant Vickers, defendant's sales representative, called plaintiff into defendant's Raleigh office and delivered to him a document entitled "Notice of Termination of Distribution Agreement." (Id. ¶ 24 & Ex. 5.) In that document, defendant informed plaintiff that it recently discovered that plaintiff had "engaged in a practice of 'flushing' product by creating false sales and 'buyback' invoices," for which plaintiff received approximately $2,500 to which he was not entitled. (Id., Ex. 5.) According to the document, such conduct constitutes a "material and non-curable breach" of the Distribution Agreement. (Id.) The document also refers to other "material violations" of the Agreement, which constitute a "chronic breach" of the Agreement. (Id.) Defendant terminated the Distribution Agreement effective immediately. (Id.) Plaintiff requested a hearing with management to produce evidence regarding the termination, but Vickers refused and informed plaintiff that he could not return to defendant's premises. (Compl., DE # 1-1, ¶ 25.) Since defendant's termination of the Distribution Agreement, defendant has been operating the distribution route in plaintiff's name at a loss. (Id. ¶¶ 33-34.)

On 8 January 2014, plaintiff filed the instant complaint in state court, asserting claims for breach of contract, fraud, and unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes. Plaintiff seeks injunctive and compensatory relief, including punitive

damages. On 9 January 2014, defendant removed the action to this court.

Since that time, the parties have filed a number of motions. Significantly, plaintiff moved for issuance of a preliminary injunction, and several days later, defendant filed the instant motion to dismiss. On 30 May 2014, the court denied plaintiff's motion for a preliminary injunction. (DE # 40.) The motion to dismiss is the only pending motion.

Defendant moves to dismiss plaintiff's fraud and unfair and deceptive trade practices claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

> To survive a motion to dismiss pursuant to Rule 12(b)(6), [the plaintiff's] "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [its] claims across the line from conceivable to plausible."
>> The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of 'entitlement to relief.'"
>>> To emphasize the Federal Rules' requirements for stating claims that are warranted and therefore form a plausible basis for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>>>> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will

3

> "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'— 'that the pleader is entitled to relief,'" as required by Rule 8.

Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013) (most alterations in original) (citations omitted).

In making this determination, the court does not normally consider matters outside of the complaint. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The court may, however, consider those documents attached to the complaint itself "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted).

Turning to plaintiff's fraud claim, he alleges that "Defendant committed fraud by intentionally and fraudulently making false and untrue allegations in the notice of termination for the purpose of attempting to create some sort of claim that would justify the termination of Plaintiff's independent operator's contract." (Compl., DE # 1-1, ¶ 55.) According to plaintiff, he did not engage in "'flushing product'" as set forth in the Notice of Termination, (id. ¶ 26), and he claims that the statements in the Notice were untrue and simply "'trumped up' excuses for terminating [him]," (id. ¶ 27). Defendant's real reason for terminating the Distribution Agreement, plaintiff contends, was to "punish[] the Plaintiff for taking an active role in attempting to negotiate a return to the margins paid prior to the actions taken by the Defendant in reducing margins," (id. ¶ 28), and to profit from the resale of the distribution route, (id. ¶ 32).

4

Therefore, under plaintiff's theory, defendant's alleged misrepresentation of the reason for termination of the Distribution Agreement to plaintiff constitutes fraud. (See Resp., DE # 25, at 5.)

Under North Carolina law, "[t]he essential elements of actionable fraud are: '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" Cobb v. Pa. Life Ins. Co., 715 S.E.2d 541, 549 (N.C. Ct. App. 2011) (citation omitted) (alteration in original). Here, plaintiff was not in fact deceived by defendant's purportedly false statements in the Notice of Termination. He challenged the termination of the Distribution Agreement from the outset. (See Compl., DE # 1-1, ¶ 25 ("request[ing] a hearing with management so he could produce evidence regarding the termination of his independent operator's contract.")). Accordingly, plaintiff has failed to state a claim for fraud.

The other claim defendant challenges is plaintiff's claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq*.

> The UDTPA is meant to prevent "unfair or deceptive acts or practices in or affecting commerce." In order to state a claim under the UDTPA, a plaintiff must show "(1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." Whether conduct is "unfair" or "deceptive" is a legal issue for the court to decide.
> [A] mere breach of contract claim "is not unfair or deceptive, . . . absent substantial aggravating circumstances." The North Carolina Court of Appeals has further explained,
>> Egregious or aggravating circumstances must be alleged before the provisions of the [UDTPA] may take effect. Aggravating circumstances include conduct of the breaching party that is deceptive. Finally, in determining whether a particular act or practice is deceptive, its effect on the average

5

> consumer is considered.
> Indeed, "it is unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations."

Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012) (citations omitted).

Defendant contends that plaintiff's allegations amount to nothing more than a standard breach of contract action. (Mem., DE # 15, at 7.) The court disagrees. At this stage of the proceedings, the facts of this case are sufficiently analogous to those in Johnson v. Colonial Life & Accident Ins. Co., 618 S.E.2d 867 (N.C. Ct. App. 2005). In Johnson, the plaintiff's employment as an insurance sales representative could only be terminated for cause. 618 S.E.2d at 869. The letter terminating the plaintiff's employment stated that he was being terminated for filing a fraudulent claim for benefits (which would be cause for termination under the terms of the contract). Id. However, the plaintiff claimed that the real reason for his termination was his employer's dissatisfaction with his assisting policyholders in filling out insurance claims. Id. The employer's motion for summary judgment was denied, and the case was submitted to the jury on the issues of breach of the employment contract and whether the employer had engaged in specified, aggravated circumstances associated with the breach, among other issues. Id. at 870. The jury found that the employer breached the contract, i.e., the termination was not for cause. Id. at 870-71. The North Carolina Court of Appeals found that, based on the conflicting evidence regarding the issue of whether plaintiff filed a fraudulent claim for benefits, the breach of contract claim was properly submitted to the jury. Id. In considering the employer's appeal of the trial court's determination that there was a violation of the UDTPA, the appellate court stated:

> [The Plaintiff] presented evidence that false accusations were deceptively made against him as a pre-text forming the basis of termination and the jury agreed. Therefore, where the jury found that there was a breach of contract accompanied by aggravating factors, it was proper for the judge to conclude as a matter of law that a claim under N.C. Gen. Stat. § 75-1.1 had been satisfied.

Id. at 871.

In this case, plaintiff is claiming that not only did defendant terminate their agreement contrary to its terms but also defendant acted unfairly and deceptively by pretextually terminating the agreement. Under Johnson, that pretextual termination may constitute a substantial aggravating circumstance attendant to the breach of contract. Therefore, the court concludes that plaintiff has sufficiently alleged a UDTPA claim.

Defendant's motion to dismiss is ALLOWED IN PART. Plaintiff's fraud claim is DISMISSED WITH PREJUDICE. Plaintiff's claims for breach of contract and unfair and deceptive trade practices remain. Trial is hereby SET for 1 June 2015 in Raleigh, North Carolina.

This 11 July 2014.

                                        W. Earl Britt
                                        Senior U.S. District Judge