IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-17-BR

| | |
|---|---|
| JOHN T. MARTIN, <br><br> Plaintiff, <br><br> v. <br><br> BIMBO FOODS BAKERIES DISTRIBUTION, INC.; f/k/a GEORGE WESTON BAKERIES DISTRIBUTION, INC., <br><br> Defendant. | ORDER |

This matter comes before the court on defendant Bimbo Foods Bakeries Distribution, Inc., f/k/a George Weston Bakeries Distribution, Inc.'s ("defendant") motion to exclude the expert testimony of Leonard P. Chalnick. (DE # 105.) Plaintiff John T. Martin ("plaintiff") filed a response, (DE # 111), to which defendant replied, (DE # 115). This matter is ripe for disposition.

This consolidated action concerns defendant's termination of its distribution agreement with plaintiff and its subsequent operation and sale of plaintiff's distribution route. Plaintiff's claims for breach of contract and unfair and deceptive trade practices remain.

Chalnick, a CPA and attorney, is the expert plaintiff retained to opine about the lost profits plaintiff allegedly sustained as a result of defendant's termination of the distribution agreement. To calculate the value of those profits, Chalnick "relied upon (1) an analysis of Route Gross Profits for 2011, 2012, and 2013 developed by [plaintiff's counsel], (2) interest rate information for the financing of a[] . . . bread route distributorship, and (3) US Food Inflation

Rates . . . ." (Chalnick Report, DE # 111-3, at 3; see also Chalnick Dep., DE # 106-1, at 23-24.)[1]
Using the gross profits provided by plaintiff's counsel, Chalnick calculated the average annual gross profits for the three-year period. (Chalnick Dep., DE # 106-1, at 12.) Starting with that number, he applied an annual inflation rate of 2.5% and a discount rate of 10% to calculate the present value of plaintiff's lost gross profits for a ten-year period. (See Chalnick Report, DE # 111-3, at 4, 9, 13.)

Defendant contends that Chalnick should be precluded from testifying under Rule 702 of the Federal Rules of Evidence because his testimony is not based upon sufficient data and therefore his analysis is unreliable. The court's analysis begins with Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In essence, the rule requires that expert testimony be relevant and reliable. See United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005).

> In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved. The court, however, should be conscious of two guiding, and sometimes competing, principles. On the one hand, the court should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence. And, the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." On the other hand, the court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to "be both powerful and quite misleading."

---

[1] Citations to page numbers are to those generated by cm/ecf.

> And, given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded.

Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (citations omitted). Plaintiff, as the proponent of the subject testimony, bears the burden of establishing its admissibility by a preponderance of the evidence. See Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

In this case, defendant argues that Chalnick's testimony should be excluded as he did not independently verify the accuracy of the data plaintiff's counsel provided to him. In response, plaintiff acknowledges that the numbers Chalnick used were provided by plaintiff (presumably through counsel). However, plaintiff claims "[t]hose numbers . . . came directly from the settlement statements submitted by the Defendant." (Resp., DE # 111, at 7.) Plaintiff points to defendant's regional manager's testimony that the settlement statements show "'everything pertaining to the operation of the independent operator's business for a settlement week'" and confirming the accuracy of the statements. (Id. at 7-8 (citation omitted).) Because defendant generated the data, plaintiff contends, it is sufficient for plaintiff's expert to rely on it.

The problem here is plaintiff's counsel did not merely pass along the settlement statements from defendant to Chalnick. Rather, plaintiff's counsel apparently extrapolated data from the statements and *then* gave the figures he deemed appropriate to Chalnick. (See Chalnick Dep., DE # 106-1, at 10 (testifying no data from defendant, including weekly settlement statements, played a role in formulating his opinions).) Chalnick relied exclusively on the data counsel gave him and did not independently assess the validity of that data. (Id. at 5, 7, 9, 11, 21-22, 23.) Therefore, he could not testify as to the accuracy of the numbers he used to form the basis for his calculations. (Id. at 12.)

The court does not mean to suggest that plaintiff's counsel necessarily gave the expert inaccurate numbers. But, the court does not know. Plaintiff's counsel is not a witness. Defense counsel cannot examine him. One is left to speculate about the data underlying the expert's conclusions. Furthermore, its validity is questionable given that the gross profits plaintiff reported on his federal income tax returns for 2011 through 2013 differ significantly from the gross profits plaintiff's counsel provided to the expert for those same years. (See id. at 14-18.) Under these circumstances, the court concludes that the expert should have independently verified the financial data plaintiff's counsel gave to him. Even though such data purportedly was derived from data produced by defendant, plaintiff's counsel, not the expert, was the one who derived the data. Without having verified that data, the expert's testimony is unreliable and not admissible. Compare King-Ind. Forge, Inc. v. Millennium Forge, Inc., No. 1:07-CV-00341-SEB-DML, 2009 WL 3187685, at *1-2 (S.D. Ind. Sept. 29, 2009) (recognizing that "when an expert relies upon information given to him by a party or counsel, he must independently verify that information before utilizing it in his calculations" (citation omitted) and excluding portion of plaintiff's expert opinion for failing to independently verify figures provided by plaintiff's employee), Lyman v. St. Jude Med. S.C., Inc., 580 F. Supp. 2d 719, 725-27 (E.D. Wisc. 2008) (excluding testimony of defense expert based on summary of sales data received from defense counsel because the expert "should have independently verified the reliability of the data before opining on plaintiffs' future sales, as opposed to accepting it at the word of [defense] counsel"), and Dreyer v. Ryder Auto. Carrier Grp., Inc. No. 98-CV-82A(F), 2005 WL 1074320, at *26 (W.D.N.Y. Feb. 9, 2005) (excluding defense expert witness testimony based on expert's failure to independently verify accuracy of underlying data obtained "from a staff member in Defendants' attorney's office who obtained the information from Defendants' consultant"), with

4

McReynolds v. Sodexho Marriott Servs, Inc., 349 F. Supp. 2d 30, 38 (D.D.C. 2004) (denying defendant's motion to exclude plaintiff's expert on the ground that the expert had failed to independently verify data produced by defendant itself).

For the foregoing reasons, defendant's motion to exclude the testimony of Chalnick is GRANTED.

This 6 September 2016.

_____
W. Earl Britt
Senior U.S. District Judge