IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-17-BR

| | |
|---|---|
| JOHN T. MARTIN,<br><br>      Plaintiff,<br><br>v.<br><br>BIMBO FOODS BAKERIES<br>DISTRIBUTION, INC.; f/k/a<br>GEORGE WESTON BAKERIES<br>DISTRIBUTION, INC.,<br><br>      Defendant. | ORDER |

      This matter comes before the court on defendant Bimbo Foods Bakeries Distribution, Inc., f/k/a George Weston Bakeries Distribution, Inc.'s ("defendant") motion for partial summary judgment. (DE # 107.) Plaintiff John T. Martin ("plaintiff") filed a response, (DE # 112), to which defendant replied, (DE # 121). This matter is ripe for disposition.

      This consolidated action concerns defendant's termination of its distribution agreement with plaintiff and its subsequent operation and sale of plaintiff's distribution route. Plaintiff's claims for breach of contract and unfair and deceptive trade practices remain. At issue now is whether plaintiff is barred by the terms of the parties' agreement from recovering lost profits and if not, whether such damages are too speculative.

      Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When contract interpretation is involved, as it is here, "[t]he first step for a court . . . is . . . to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face." Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc., 476 F.3d 231, 235 (4th

Cir. 2007) (citation and quotation marks omitted). "If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." Id. (citation and quotation marks omitted).

Under Pennsylvania law,[1] "[t]he interpretation of any contract is a question of law[.]" Stephan v. Waldron Elec. Heating & Cooling LLC, 100 A.3d 660, 665 (Pa. Super. Ct. 2014) (citation and quotation marks omitted).

> In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

Id. (citation and quotation marks omitted).

In this case, plaintiff seeks to recover the profits he lost upon defendant's termination of his distribution route. Defendant contends that the limitation of liability provision under the parties' Distribution Agreement bars plaintiff's recovery of *any* lost profits. That provision provides "'in no event shall either party be liable to the other for any consequential, incidental, indirect or special damages, including lost profits and punitive damages.'" (Def.'s Stmt., DE # 109, ¶ 1 (citation omitted); see also Pl.'s Resp., DE # 113, ¶ 1.) Plaintiff does not dispute the enforceability of this provision. Rather, he argues that it only bars the recovery of lost profits deemed consequential (or indirect) damages, which he contends he does not seek.

First, the court considers what damages the limitation of liability provision bars. The provision's meaning is plain. It prohibits several categories of damages, namely, consequential,

---

[1] The court has recognized previously that Pennsylvania law applies to plaintiff's breach of contract claim. (4/23/15 Order, DE # 53, at 4 n.2.)

incidental, indirect, and special. It then provides lost profits as an example. However, that does not mean *all* lost profits are barred. It is the recovery of lost profits which are considered consequential, incidental, indirect, or special damages that is precluded. As the Tenth Circuit Court of Appeals has explained with regard to a similar limitation of liability provision,

> [t]he parties' language is not unlike a doctor's prescription that "You really should not eat fried foods—and this includes, but is not limited to, meat and potatoes." Ordinary usage and common experience does not suggest that the patient should avoid all meat and potatoes, but only those that are parts or components of the initial, larger group of fried foods (say, chicken fried steak and french fries). The dictionary underscores the point. Webster's defines the term "to include" as meaning "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." *Webster's Third New International Dictionary* 1143 (2002). The more general term informs the subsequently listed examples, not the other way around, and so lost profits here refer only to those that are "a part or component" of the larger group or class of consequential damages.

Penncro Assocs., Inc. v. Sprint Spectrum, L.P., 499 F.3d 1151, 1156 (10th Cir. 2007).

Next, the court determines the category of damages under which lost profits fall under Pennsylvania law. Defendant seems to argue that lost profits can only constitute consequential or indirect damages. However, the cases to which defendant cites do not suggest Pennsylvania has such a bright-line rule.

For example, in Fish Net, Inc. v. ProfitCenter Software, Inc, No. 09-5466, 2013 WL 5635992, at *9 (E.D. Pa. Oct. 15, 2013), the plaintiff challenged limitation of liability provisions that excluded lost profits on the ground of enforceability under Pennsylvania's version of the Uniform Commercial Code ("UCC") and unconscionability. It conceded that if the provisions were enforceable, they precluded recovery of lost profits and other non-direct damages. Id. Thus, whether lost profits could be considered direct damages was not an issue. Similarly, in Stanley A. Klopp, Inc. v. John Deere Company, 510 F. Supp. 807 (E.D. Pa. 1981), the court merely considered whether a contract clause excluding loss of prospective profits was

3

unenforceable as unconscionable under the UCC and does not discuss what category of damages lost profits are within.

In another case cited by defendant, AM/PM Franchise Association v. Atlantic Richfield Company, 584 A.2d 915 (Pa. 1990), the Pennsylvania Supreme Court considered the types of lost profits recoverable as consequential damages for breach of warranty under the UCC. The court did recognize that under Pennsylvania law, prospective profits may be recovered for breach of contract. Id. at 925-26 n.19. However, nothing in the case leads to the conclusion that lost profits are always considered a type of consequential damages.

In the absence of definitive guidance from cases construing Pennsylvania law, this court follows what appears to be the majority position: lost profits can be, depending on the circumstances, direct (general) damages or indirect (consequential) damages.

> [T]he difference between direct and consequential damages depends on whether the damages represent (1) a loss in value of the other party's performance, in which case the damages are direct, or (2) collateral losses following the breach, in which case the damages are consequential. *See, e.g.*, Restatement (Second) of Contracts § 347 cmt. c (1981). As the Second Circuit has explained,
>> Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements. In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are "lost." . . .
>> By contrast, when the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract, the damages sought are general damages. The damages may still be characterized as lost profits since, had the contract been performed, the non-breaching party would have profited to the extent that his cost of performance was less than the total value of the breaching party's promised payments. But, in this case, the lost profits are the direct and probable consequence of the breach.

4

> *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir.2007) (citation omitted). A case on which [the plaintiff] relies makes the same point:
>> Direct damages refer to those which the party lost from the contract itself—in other words, the benefit of the bargain—while consequential damages refer to economic harm beyond the immediate scope of the contract. Lost profits, under appropriate circumstances, can be recoverable as a component of either (and both) direct and consequential damages. Thus, for example, if a services contract is breached and the plaintiff anticipated a profit under the contract, those profits would be recoverable as a component of direct, benefit of the bargain damages. If that same breach had the knock-on effect of causing the plaintiff to close its doors, precluding it from performing other work for which it had contracted and from which it expected to make a profit, those lost profits might be recovered as "consequential" to the breach.
>
> *Penncro*[, 499 F.3d at 1156] (footnotes omitted).

Atl. City Assocs., LLC, v. Carter & Burgess Consultants, Inc., 453 F. App'x 174, 179-80 (3d Cir. 2011) (omission in original).

Having concluded that lost profits may be considered either direct or consequential damages for breach of contract, the court must now determine how plaintiff's alleged profits should be categorized. The court looks to the Distribution Agreement and, specifically, what the parties bargained for. As recognized in the prior summary judgment order, plaintiff's income was based on "'margin.'" (4/23/15 Order, DE # 53, at 1.) Under the Distribution Agreement, margin is the difference between the price defendant charged plaintiff for the bakery products (less credit for any returned products) and the amount defendant paid plaintiff for receivables (i.e., amounts owed by grocery stores for bakery products sold). (See DE # 1-1, Ex. 1, §§ 3.2-3.5.) Plaintiff had no contracts or independent arrangements with the grocery stores. The profits plaintiff lost were on the contract itself. Accordingly, they are direct damages and not precluded by the limitation of liability provision.

5

Defendant alternatively contends that plaintiff's lost profits are too speculative to be recoverable.

> Although mathematical certainty is not typically required, the general rule in Pennsylvania, as in most jurisdictions, is that if damages are difficult to establish, an injured party need only prove damages with reasonable certainty. Doubts are construed against the breaching party.
>     "Reasonable certainty," as with most other standards of proof, is a difficult concept to quantify, but Pennsylvania courts have provided guidance as to what the term entails for purposes of assessing damages. At a minimum, reasonable certainty embraces a rough calculation that is not "too speculative, vague or contingent" upon some unknown factor. Conversely, applying the reasonable certainty standard does not preclude an award of damages because of "some uncertainty as to the precise amount of damages incurred." Pennsylvania jurisprudence governing the issue is summarized in *Aiken Indus., Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808 (1978), where the Pennsylvania Supreme Court ultimately concluded "that compensation for breach of contract cannot be justly refused because proof of the exact amount of loss is not produced, for there is judicial recognition of the difficulty or even impossibility of the production of such proof. What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages."

ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 669-70 (3d Cir. 1998) (citations omitted).

Specifically, defendant complains about plaintiff's failure to support his "Summary of John Martin's Damages" and "Loss of Earnings" with evidence, such as accounting records or other documents, and about the fact that those projections are inconsistent.[2] Plaintiff responds that his damages forecasts are supported by his deposition testimony, tax returns, and income reports generated by defendant. At this time, not having heard or seen that evidence, the court is unable to conclude as a matter of law that plaintiff cannot establish lost profits with reasonable certainty.

---
[2] Defendant also takes issue with the projections proffered by plaintiff's expert, Leonard Chalnick. The court has excluded the expert's testimony, (9/6/16 Order, DE # 122), and therefore does not consider any argument regarding his opinions.

6

For the foregoing reasons, defendant's motion for partial summary judgment is DENIED.

This 21 September 2016.

_____

W. Earl Britt

Senior U.S. District Judge

7

Case 5:14-cv-00017-BR   Document 144   Filed 09/21/16   Page 7 of 7